United States District Court
Southern District of Texas
**ENTERED**
September 10, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HEATHER H.,[1] | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:20-cv-736 |
| | § | |
| KILOLO KIJAKAZI,[2] | § | |
| Acting Commissioner of Social | § | |
| Security, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Heather H. filed this suit seeking judicial review of the denial of disability insurance benefits under Title II and XVI of the Social Security Act ("the Act"). ECF No. 1 at 3–4. The Parties consented to have this Court conduct all proceedings in this matter pursuant to 28 U.S.C. § 636(c) and filed cross-motions for summary judgment, ECF Nos. 15, 18. Having reviewed the motions, record, and the applicable law, the Court determines that Plaintiff's motion should be granted,

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] The suit was originally filed against Andrew Saul, the then-Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been automatically substituted as Defendant.

and Defendant's motion should be denied.

## I.  BACKGROUND

Plaintiff is 49 years old, R. 295,[3] and completed three years of college. R. 68, 80, 251. Plaintiff worked as a sales associate and manager. R. 67, 97–98, 240, 251. She alleges a disability onset date of January 1, 2016. R. 58, 70, 206, 213.[4] Plaintiff claims she suffers from both physical and mental impairments, R. 15–16, 58, 124, 250, causing weakness and pain in her neck, back, and upper extremities, particularly her dominant (left) arm, R. 46–52.

On May 30, 2017, Plaintiff filed an application for disability insurance benefits and supplemental security income under both Titles II and XVI of the Act. R. 10, 23, 58, 85. She based her application on back pain, depression, and attention deficit hyperactivity disorder. R. 58, 70, 124, 131, 250. The Commissioner denied her claims initially, R. 118, 125, and on reconsideration, R. 134, 135–142.

A hearing was held before an Administrative Law Judge ("ALJ"). R. 37–43,

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 10.

[4] The ALJ found that Plaintiff's work after the alleged disability onset date was an unsuccessful work attempt. R. 13 (citing 20 C.F.R. §§ 404.1574(c), 404.1575(d), 416.974(c), and 416.975(d)). An "unsuccessful work attempt" is defined as when "your impairment forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the substantial gainful activity earnings level in paragraph (b)(2) and you meet the conditions described in paragraphs (c)(2), (3) and (4) of this section." 20 C.F.R. § 404.1574(c)(1). Plaintiff earned $1,920.00 in the fourth quarter of 2016 and $1,002.00 in the first quarter of 2017. R. 13. Accordingly, the ALJ found this work did not constitute substantial work activity as is defined in the regulations, i.e. the earnings from the jobs did not average at least $1,130.00 per month in 2016, or $1,170.00 per month in 2017. R. 13 (citing 20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

46–57. An attorney represented Plaintiff at the hearing. R. 46. Plaintiff, a medical expert, and a vocational expert testified at the hearing. R. 47, 53, 55. The ALJ issued a decision denying Plaintiff's request for benefits. R. 23.[5] The Appeals Council denied Plaintiff's request for review, thus upholding the ALJ's decision to deny disability benefits and supplemental security income. R. 1.

Plaintiff filed this case, ECF No. 1, challenging the ALJ's analysis and seeking remand, Pl.'s MSJ, ECF No. 15. Defendant counters, arguing that the ALJ considered all the medical evidence, and that substantial evidence supports the ALJ's assessment. Def.'s MSJ, ECF No. 18, at 2–8.

---

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ determined Plaintiff was not disabled at step five. R. 22–23. At step one, the ALJ found Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured. R. 13 (citing 20 C.F.R. 404.1571 *et seq.*). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, anxiety disorder, depressive disorder, attention deficit hyperactivity disorder, and somatic symptom disorder. R. 13. At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). R. 13. The ALJ found that Plaintiff has the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b). However, the ALJ including limitations, including that Plaintiff could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; could frequently handle, finger, and feel bilaterally; could occasionally reach overhead bilaterally; could understand, remember, and carry out simple, routine tasks, involving simple, work-related instructions; could have no interaction with the general public; and could have occasional interaction with coworkers and supervisors. R. 15. At step four, the ALJ determined Plaintiff was unable to perform any past relevant work. R. 22. At step five, based on the testimony of the vocational expert and a review of the record, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including occupations such as mail clerk, photocopy machine operator, and laundry press operator. R. 22–23. Therefore, the ALJ concluded Plaintiff was not disabled. R. 23.

3

## II.    STANDARD OF REVIEW

The Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id*.

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether the decision is supported by substantial evidence on the record and whether the proper legal standards were applied. *Id*.; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). Substantial evidence is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

"The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Thornhill v. Colvin*, No.

14-CV-335, 2015 WL 232844, at *3 (N.D. Tex. Jan. 16, 2015) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *1 (S.D. Tex. Nov. 30, 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). A reviewing court may not reweigh the evidence in the record, try issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Conflicts in the evidence are for the Commissioner, not the Court, to resolve. *Id.*

However, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, considering whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. A finding of no substantial evidence is appropriate only if no credible choices or no medical evidence exists to support the decision. *See Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   BURDEN OF PROOF

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d) (1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

The Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr*, 2012 WL 6020061, at *2. The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step

in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff argues that the ALJ failed to consider all the evidence. ECF No. 15 at 1, 5.[6] Additionally, Plaintiff alleges that the ALJ's hypothetical questions to the vocational expert did not include every limitation caused by her impairments, which resulted in an erroneous determination that there were jobs she could perform. *Id.* at 2. Defendant counters that substantial evidence supported the ALJ's findings. ECF No. 18. The Court finds that although the ALJ considered the medical evidence, he substituted his opinion for the doctors' regarding Plaintiff's mental impairments and overlooked Plaintiff's need for a cane in formulating the RFC, requiring remand.

### A. The ALJ Did Not Properly Conduct the Plaintiff's RFC Analysis.

Between the third and fourth steps of the sequential analysis, the ALJ must decide the claimant's RFC, which is defined as the most the claimant can still do despite his [or her] physical and mental limitations … based on all relevant evidence in the claimant's record." *Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018) (citation omitted). The RFC determination is the "sole responsibility of the

---

[6] Although Plaintiff argues that the ALJ erred at step three, ECF No. 15 at 5, she makes no arguments that her impairment equals one of the listings. Instead, the Court interprets this argument as referring to the residual functional capacity ("RFC") determination that is made between steps three and four.

ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (quoting *Ripley*, 67 F.3d at 557).

When making the RFC determination, the ALJ must consider all medical opinions contained in the record. *Id.*; 42 U.S.C. § 405(b)(1). The ALJ must "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL4734995, at *8 (S.D. Tex. Aug 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

### 1. *The RFC analysis was improper.*

Plaintiff argues that the ALJ improperly evaluated the medical findings because he did not consider all the evidence. ECF No. 15 at 6. Plaintiff contends that had the ALJ fully evaluated the record, then he would have found Plaintiff disabled. *Id.* at 23.

The ALJ must discuss the evidence and explain why he did or did not find Plaintiff to be disabled. 42 U.S.C. § 405(b)(1). However, the regulations do not require the ALJ to include "an exhaustive point-by-point discussion." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining that an ALJ must offer some

explanation to support her conclusion but not an exhaustive list); *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) ("[T]hat the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record.").

Under the new rule regarding RFC determinations, the ALJ is no longer required to defer or give any specific evidentiary weight to any medical opinion or prior administrative finding. 20 C.F.R. § 404.1520c(a).[7] Instead, the ALJ is required to consider all medical opinions and prior administrative medical findings using specific factors: (1) supportability; (2) consistency; (3) the physician's relationships with the claimant, which includes considering the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) the physician's specialization, and (5) other factors. 20 C.F.R. § 404.1520c(b).[8] The most important factors are consistency and supportability. *Id.; Garcia*, 2020 WL 7417380, at *4. Under the new guidelines, the ALJ must articulate how persuasive he finds each of the opinions in the record. 20 C.F.R. § 404.1520c(b).

---

[7] For claims filed after March 27, 2017, the new guidelines have eliminated the former requirement that the ALJ give deference to the opinions of treating physicians. *Garcia v. Saul*, No. SA-19-CV-01307-ESC, 2020 WL 7417380, at *4 (W.D. Tex. Dec. 18, 2020) (explaining that despite new regulations, previous decisions are still relevant as supportability and consistency have always been the most important considerations.). Because Plaintiff's claim was filed in 2020, this new rule applies.

[8] Other factors include evidence showing the medical source is familiar with the other evidence in the claim, or that the medical source understands the disability program's policies and evidentiary policies. 20 C.F.R. § 404.1520c(b).

a. *The RFC regarding Plaintiff's mental health impairment was improperly based on the ALJ's lay opinion.*

Plaintiff argues that the ALJ erred because he failed to consider Plaintiff's psychiatric treatment history. ECF No. 15 at 6. Plaintiff asserts that from January 8, 2016 through April 2018, she sought mental health treatment from at least five mental health professionals and the ALJ's review was too cursory. *Id.* at 7.

To the contrary, the ALJ found that Plaintiff had four severe impairments of a psychological nature: anxiety disorder, depressive disorder, attention deficit hyperactivity disorder, and somatic symptom disorder. R. 13. The mere presence of an impairment, however, is not sufficient to establish that the Plaintiff is suffering from a disability. Rather, Plaintiff bears the burden of establishing that she is disabled because she is "incapable of engaging in any substantial gainful activity." *Foster*, 2011 WL 5509475, at *6 (citing *Anthony*, 954 F.2d at 293). The ALJ found that Plaintiff's mental impairments, while severe, were not totally disabling and did not preclude the performance of all substantial gainful activity. R. 21.

Although not required to do an exhaustive point by point discussion, the ALJ summarized Plaintiff's mental treatment history and discussed why the evidence did not result in a finding of disability. The ALJ mentioned each of the treating doctor's notes, evaluations, treatment, and medications. R. 19.[9] After reviewing the records,

---

[9] In evaluating the records from Baylor College of Medicine, the ALJ observed Plaintiff's "[m]ental status examination was within normal limits," and psychiatrists prescribed medication and therapy. R. 19 (referencing R. 361–62 (9/28/15); R. 364–65 (10/29/15); R. 366–67 (1/8/16);

the ALJ stated that, "[c]onsidering her mental impairments and limitations, there is no evidence of psychotic symptoms, suicidal ideation, or serious deficits in memory or concentration that precludes simple work. Because of her generalized anxiety disorder, she is limited socially."   R. 20. The ALJ also found that psychiatric medication controls Plaintiff's mental impairments. R. 21.

The ALJ's findings are largely supported by the medical records. Plaintiff's psychiatrists diagnosed her with depression, major depressive disorder, anxiety, panic disorder, among other mental health conditions.[10] The records also reflect that the Plaintiff improved with medication.[11] The records documented mental status examinations finding Plaintiff had good memory, good judgment, and good insight;

---

R. 369–71 (3/24/16); R. 372–73 (4/20/16); R. 376–77 (5/20/16)).  Similarly, when discussing both Dr. Bhatti's records and Dr. Saaed's records, the ALJ noted the psychiatrists' prescriptions for medication and therapy. R. 19 (referencing R. 559–62 (10/29/16), R. 543–45 (9/13/17)).

[10] Over a several months, records from Baylor College of Medicine show Plaintiff was diagnosed with depression and recurrent moderate panic disorder. R. 362 (9/28/15); R. 365 (10/29/15); R. 368 (1/8/16); R. 371 (3/24/16); R. 374 (4/20/16); R. 378 (5/20/16). Plaintiff reported feeling sad and anxious, R. 361-62 (9/28/15); R. 364 (10/29/15); R. 366-67 (1/8/16); R. 369 (3/24/16); R. 372-373 (4/20/16); R. 376-77 (5/20/16); she was not able to achieve tasks in a timely manner and suffered from a lack of motivation, R. 365 (10/29/15); R. 369, 371 (3/24/16); R. 376 (5/20/16). Dr. Bhatti diagnosed Plaintiff with major depressive disorder, attention deficit disorder, generalized anxiety disorder, and a global assessment of function (GAF) score of 49. R. 563 (10/29/16). A GAF score of 41-50 denotes serious symptoms or any serious impairment in social, occupational, or school functioning. *Locure v. Colvin*, No. 14-CV-1318, 2015 WL 1505903, at *8 n.5-6 (E.D. La. Apr. 1, 2015). Dr. Saaed diagnosed Plaintiff with major depressive disorder and anxiety, among other ailments. R. 545. Dr. Costa diagnosed Plaintiff with depressive disorder, panic disorder, and adjustment disorder with anxious mood. R. 822.

[11]  Baylor attending psychiatrists noted Plaintiff's stability with medication. R. 361–62 (9/28/15); R. 364–65 (10/29/15); R. 366–67 (1/8/16); R. 369–71 (3/24/16); R. 372–73 (4/20/16); R. 376–77 (5/20/16). Dr. Bhatia documented that Plaintiff improved on medication. R. 559–62 (10/29/16). Dr. Saaed encouraged Plaintiff to take medications as prescribed and not to skip doses. R. 545. Additionally, Dr. Saaed prescribed continued therapy. R. 545.

was well-oriented; and had no suicidal ideation or cognitive defects.[12]

Dr. Costa was the sole consultative examining psychiatrist. Dr. Costa concluded that Plaintiff had a "poor prognosis." R. 19. The ALJ found this conclusion inconsistent with Dr. Costa's findings, which the ALJ thought were moderate at worst. R. 19-20. Thus, the ALJ found Dr. Costa's opinion was not supported by his notes[13] or the record as a whole, considering what the ALJ characterized as the overall normal reviews in the other records and objective findings. R. 19-20.

Plaintiff argues that Dr. Costa's findings are fully supported by her history of treatment. Although Plaintiff is correct that Dr. Costa's opinions were supported by the medical records and history of treatment, the ALJ is entitled to evaluate and determine the weight and persuasiveness of the evidence. *See Scott*, 770 F.2d at 485. Considering the section 404 factors, the ALJ found that Dr. Costa's opinion was not persuasive. R. 19-20. The Court may not reweigh the evidence or substitute its

---

[12] Baylor attending psychiatrists noted Plaintiff's fair memory, good attention span and concentration, and fair insight and judgment. R. 361–62 (9/28/15); R. 364–65 (10/29/15); R. 366–67 (1/8/16); R. 369–71 (3/24/16); R. 372–73 (4/20/16); R. 376–77 (5/20/16). Plaintiff held no thoughts of suicide or harm. R. 359 (9/28/15); R. 364 (10/24/15); R. 367 (1/8/16); R. 370 (3/24/16); R. 373 (4/20/16); R. 377 (5/20/16). Dr. Bhatia documented that Plaintiff was alert, well-groomed, had good posture, and fair memory. R. 559–62 (10/29/16). Dr. Saaed found Plaintiff possessed no cognitive defects, had a fair fund of knowledge, and had fair memory. R. 544–45 (9/13/17). Dr. Costa described Plaintiff as well-oriented, with good judgment, good insight, and no suicidal or homicidal thoughts. R. 820–23 (2/8/18).

[13] Dr. Costa reported Plaintiff was anxious and highly tangential. R. 821-22. Dr. Costa also noted Plaintiff was oriented to person, place, and time. R. 822. Plaintiff appeared to have a fair fund of information, good judgment, and good insight. R. 822.

opinion for the ALJ's even when the evidence preponderates against the conclusion. *Brown*, 192 F.3d at 496.

The ALJ also discussed two mental RFC assessments, conducted by Dr. Wong and Dr. Germain. R. 21.[14] The ALJ found both RFC reports to be inconsistent with, and not supported by other medical evidence in the record. *Id*. The ALJ found the psychological consultants did not adequately consider Plaintiff's subjective complaints or have the benefit of reviewing the entire record, including hearing Plaintiff's testimony. R. 21. The ALJ concluded the consultants' opinions were not persuasive. R. 21.

Thus, after finding the opinions of Dr. Costa, Dr. Wong, and Dr. Germain to be unpersuasive, the ALJ concluded that the record failed to support Plaintiff's allegations of total disability from her mental impairments. *Id*.[15] The ALJ found that the RFC was consistent with the longitudinal medical records and medical opinions. R. 21.

---

[14] Dr. Germain conducted an RFC examination and opined that Plaintiff could understand, remember, and carry out detailed, but not complex instructions, and respond appropriately to changes in the routine work setting. R. 62–68 (8/10/17). In his RFC examination, Dr. Wong opined that Plaintiff could understand, remember, and carry out only simple instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in the routine work setting. R. 90–92 (3/5/18).

[15] The Defendant claims that the ALJ noted a gap in Plaintiff's therapy treatment. ECF No. 18-1 at 4. Further, the Commissioner alleges Plaintiff only sought treatment ten times in three years. *Id.* at 5. Thus, the Commissioner argues Plaintiff's symptoms were not as severe as she alleged. *Id*. However, the ALJ's opinion can only stand or fall with the reasons stated in it. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Because the ALJ did not state that the lack of treatment was a

Although the ALJ is generally tasked with weighing medical opinions and determining a plaintiff's RFC, *Taylor*, 706 F.3d at 602-03, "an ALJ may not— without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (warning an ALJ "must be careful not to succumb to the temptation to play doctor," as "lay intuitions about medical phenomena are often wrong") (quotations omitted). This is particularly true in questions of mental impairment because "[d]etermining whether a claimant is disabled because of a mental condition under the … sequential process can be a difficult task." *Singletary*, 798 F.2d at 820. "Consequently, when the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." *Garcia v. Berryhill*, No. 17-CV-263, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018) (collecting cases); *accord Allen v. Saul*, No. 4:19-cv-1575, 2020 WL 5412630, at *7 (S.D. Tex. Sept. 9, 2020); *Beachum v. Berryhill*, No. 17-CV-95, 2018 WL 4560214, at *4 (W.D. Tex. Sept. 21, 2018).

---

reason for finding the mental impairments were not as severe as Plaintiff alleged, the Court cannot consider this argument.

Here, there were no other medical opinions the ALJ considered. The ALJ, therefore, improperly interpreted the raw medical data contained in the records to formulate an RFC. *See, e.g.*, *Allen*, 2020 WL 5412630, at *7 (remanding when the ALJ gave little weight to opinions of treating psychiatrists and partial weight to the SAMCs' who did not review the most recent records, thereby improperly interpreting the raw medical data to formulate the RFC); *Beachum*, 2018 WL 4560214, at *3-4 (noting that the ALJ, by her own admission, dismissed the medical consultant's opinion and thus improperly determined the RFC based on her lay opinion); *Garcia*, 2018 WL 1513688, at *3 ("[T]he ALJ rejected all opining physicians, credited no ascertainable portions of their opinions, cited raw medical data, and made judgments regarding Plaintiff's RFC.) (citation omitted).

"Accordingly, the Court can only conclude that the ALJ substituted his own judgment over the medical opinions of the physicians of record." *Garcia*, 2018 WL 1513688, at *3. Therefore, substantial evidence does not support the ALJ's RFC findings concerning Plaintiff's mental limitations. Remand is necessary.

> b. *The RFC regarding Plaintiff's physical impairments was improper.*

Plaintiff argues that the ALJ erred because he failed to recognize that Plaintiff's neck fusion was unsuccessful, impacting the range of motion in her left arm. ECF No. 15 at 23–25. Plaintiff further contends that her doctors' opinions were contrary to the testifying medical expert, Dr. Krishnamurthi's opinion, on which the

ALJ erred in relying to conclude that Plaintiff could perform light work. *Id.* at 25.

The ALJ recounted Plaintiff's testimony that the December 2017 surgery "was not successful," and "[n]othing improved, and certain things worsened, like bending, lifting, writing, signing, and driving." R. 16. The ALJ found, however, that Plaintiff's testimony was not "entirely consistent regarding the severity of her symptoms and their effect on her ability to perform work related activities." R. 16. The ALJ considered the Plaintiff's activities of daily living to conclude that she is not totally precluded from all work activities. R. 16.[16]

In addition, the ALJ considered the facts of the record in accordance with section 404 in determining Plaintiff's RFC limitations. The ALJ discussed the records of each of her treating physicians, including Dr. Berry,[17] Dr. Jain,[18] and Dr. Hernandez.[19] R. 19.

---

[16] The ALJ noted that Plaintiff is able to read, pay bills, manage her finances, care for her daughter and pet, maintain her personal hygiene and grooming, swim, do some laundry, watch television, go out alone, attend church, spend time with others, live with family, and maintain a friendship. R. 16. He also observed elsewhere that after the surgery Plaintiff no longer drives. R. 14, 16.

[17] Dr. Berry's reports indicated that Plaintiff had good strength in her upper extremities, with a full range of motion, but deceased performance in her left arm. R. 881 (3/19/18); R. 913 (11/3/18). Dr. Berry noted that she has decreased sensation from her neck to her hand. R. 913 (11/13/18). Dr. Berry documented Plaintiff's complaints of pain in the neck and arm radiating to her hand, and of dropping things with her left hand. R. 913 (11/13/18).

[18] The record contained progress notes from 4/28/17 through 9/27/17 for visits to the Texas Medical Rehab and Pain Center on complaints of neck and back pain. R. 565-607. She visited with Dr. Jain who documented tests results confirming muscle tightness and pain in both the neck and back. *E.g.,* R. 573-74 (8/25/17). The plan of treatment included medication, further tests, a TENS unit and cane for better pain control and assistance walking, R. 574 (8/25/17), and physical therapy to reduce pain, R. 584 (5/26/17).

[19] Dr. Hernandez performed a neurological consultation. He noted Plaintiff's complaints of pain,

The ALJ also considered the medical consultative opinions. Both Dr. Rehnam and Dr. Kwun completed physical RFC assessments, limiting Plaintiff to light work with no non-exertional limitations. R. 64 (8/10/17); R. 94 (2/21/18). In finding these opinions persuasive, the ALJ noted that the consultants reviewed the entire medical file. Their opinions were consistent with the medical records, including the clinical findings overall, Dr. Krishnamurthi's opinion, and Plaintiff's activities of daily living. R. 21.

The ALJ also found Dr. Krishnamurthi's opinion—who testified at the hearing—to be consistent with and supported by the medical record. R. 20. Dr. Krishnamurthi limited Plaintiff to light work with additional limitations of occasional use of the left hand and reaching above the shoulder. R. 54. The ALJ found his testimony persuasive because Dr. Krishnamurthi reviewed the entire record, is Board-certified in a specialty relating to Plaintiff's impairment (internal medicine and cardiology),[20] and is familiar with the regulations. R. 20. Plaintiff contends that the ALJ misevaluated Dr. Krishnamurthi's persuasiveness. ECF No. 15 at 25. But the ALJ found Dr.  Krishnamurthi's opinion to be substantiated by the opinions of Dr. Rehman and Dr. Kwun, as well as the medical records.

---

numbness, and dropping objects. He also documented that Plaintiff reported the pain improved after surgery. He observed that Plaintiff had a decreased range of motion in her left elbow and shoulder but normal muscle tone and strength. R. 1005 (12/18/18).

[20] The Court takes issue with the ALJ's statement that these specialties relate to Plaintiff's impairment. Plaintiff's impairments fall under the mental health and orthopedic specialties.

The ALJ considered the medical evidence of the record according to the factors set out in 20 C.F.R. § 404.1520c(a). He found persuasive the testimony of the medical expert and the opinions of the consulting experts and found them to be consistent with the medical records. However, there is no accounting for Dr. Jain's prescription for a cane and Plaintiff's testimony of continued use. Plaintiff claims this was error.

### 2. The ALJ failed to incorporate Plaintiff's cane usage in the RFC.

Plaintiff argues that the ALJ did not consider her cane usage, preventing Plaintiff from being able to stand and/or walk six hours a day. ECF No. 15 at 24–27.

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for the device to aid in walking or standing and describing the circumstances for which it is needed." SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996); *Temple v. Saul*, No. 4:19-cv-3320, 2020 WL 6075644, at *3 (S.D. Tex. Oct. 14, 2020). When determining whether a hand-held assistive device is medically necessary, an ALJ must consider "the particular facts of a case" based on the evidence of the need for the device and the circumstances for which it is needed. *Temple*, 2020 WL 6075644, at *3. The ALJ errs when he ignores medical records documenting a plaintiff's need for an assistive device. *Id.* (remanding when ALJ ignored medical records documenting need for assistive devices).

Plaintiff's evidence documented that Dr. Jain recommended the use of the cane for better pain control and to assist with walking. R. 574. The ALJ referenced this record. R. 17 (referencing R. 574). In addition, the ALJ examined Plaintiff on the use of assistive devices. Plaintiff testified that after her surgery she was prescribed a cane and continued to use it for the past two years since the surgery. R. 52. She further testified that she needs to use it four days a week. R. 52. The ALJ also referenced this testimony in his opinion. R. 15. Thus, Plaintiff met her burden of establishing that the cane is medically necessary. *Temple*, 2020 WL 6075644, at *3.[21]

Although the use of a single point cane does not create an inability to ambulate,[22] because Plaintiff provided medical records documenting the necessity

---

[21] This is not a case where there was no documentation supporting the use of a cane. *Johnson v. Berryhill*, No. 3:15-CV03961-BH, 2017 WL 1105720, at *7 (N.D. Tex., Mar. 24, 2017) (affirming ALJ's decision not to include limitations for assistive device when Plaintiff failed to provide medical documentation prescribing the device and determining the situations in which it was necessary); *Donner v. Barnhart*, 285 F. Supp. 2d 800, 814 (S.D. Tex. 2002) *aff'd*, 104 F. App'x 371 (5th Cir. 2003) (explaining that without proof of a prescription or medical records documenting Plaintiff's need for an assistive device, the ALJ need not consider the assistive device in his assessment). Nor is this a case where plaintiff's use of an assistive device is purely of her own accord. *Myers v. Barnhart*, 285 F. Supp.2d 851, 862 (S.D. Tex. 2002) (affirming ALJ's finding of non-disabled when Plaintiff could perform daily activities without an assistive device and failed to show the device was prescribed or medically necessary); *Garcia v. Colvin*, No. M-15-036, 2016 WL 489753, at *6 (S.D. Tex. Jan. 11, 2016) (explaining that an observational note concerning Plaintiff's preference for using an assistive device does not equate to a medical determination that Plaintiff requires the device).

[22] "A single cane is not sufficient, under the regulations, to equal an inability to ambulate." *Maddox v. Colvin*, No. 14-1826, 2015 WL 3826280, at *18 (S.D. Tex. June 18, 2015); *see Weary v. Astrue*, 288 F. App'x 961. 967 (5th Cir. 2008) (determining that "reliance on a single cane does not limit the function of both extremities, as would reliance on a walker, two crutches or two canes as required under § 1.00B3b(1)").

of Plaintiff's cane and testified consistently with the records, the ALJ should have addressed her need for the assistive device in the RFC. *See Donner*, 285 F. Supp. 2d at 814. However, the ALJ failed to account for it, failed to ask the medical expert about it, and failed to include limitations in the RFC to address it.

Instead, the ALJ limited Plaintiff to light work.[23] The ALJ's opinion does not reflect that he determined that Plaintiff's cane usage was consistent with light work or included limitations to account for the cane. In contrast, under the regulations, sedentary work[24] does not preclude the use of a handheld device, like a cane. The regulations provide that even someone who uses a medically required hand-held device may be able to perform the minimal lifting and carrying requirements of sedentary work. SSR 96-9P, 1996 WL 374185, at *7 (emphasis added). Courts in the Fifth Circuit have recognized that sedentary work with additional postural restrictions allows for the use of a cane.[25] Although the ALJ was within his authority

---

[23] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A job in this category "requires a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

[24] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met. 20 C.F.R. § 404.1567.

[25] *Reese v. Saul*, No. 4:19-CV-2787, 2020 WL 6804513, at *3 (S.D. Tex. Nov. 3, 2020) (finding RFC of sedentary work but Plaintiff never could never crawl, climb ropes, ladders, or scaffolds properly included limitations for Plaintiff's cane); *A.D.V. v. Social Sec. Admin.*, No. 14-cv-3223, 2016 WL 3512033, at *3 (W.D. La. Feb. 26, 2016) (finding that Plaintiff could perform sedentary work without additional restrictions because Plaintiff's cane use did not have "more than a slight

to weigh the medical evidence with Plaintiff's testimony and decide Plaintiff's limitations, he failed to account for Plaintiff's use of a medically necessary assistive device in the RFC.

The ALJ's failure to do so was error. There was no proof or testimony that Plaintiff's need for the cane had changed and the record as a whole shows no general improvement in Plaintiff's physical impairments. *See Loza*, 219 F.3d at 396 (once evidence is presented that supports a finding that a condition exits, it is presumed in the absence of contrary proof that the condition remains unchanged). Although this Court cannot reweigh the evidence, judicial review is not merely a rubber stamp of the ALJ's findings. *Singletary*, 798 F.2d at 822–23. Despite acknowledging that Dr. Jain prescribed a cane as part of Plaintiff's treatment plan, the ALJ failed to incorporate Plaintiff's cane usage in the RFC or explain why he was not accounting for it. The ALJ may have considered and may have had valid reasons for not including the cane; but as he did not explain them, the Court is unable to determine whether any such rejection is based on substantial evidence. *See Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995);[26] *cf. Loza*, 219 F.3d at 395 (holding the ALJ cannot

---

impact" on ability to perform the full range of sedentary work.); *Montgomery v. Colvin*, No. 4:12-CV-574-Y, 2013 WL 5314410, at *9 (N.D. Tex. Sept. 20, 2013) (affirming ALJ's RFC of sedentary work with restrictions in climbing, stooping, kneeling, and crawling due to Plaintiff's need for a cane).

[26] This case was cited with approval and followed in *Loza*, 219 F.3d at 396.

reject a medical opinion with an explanation). Initial determinations of fact and credibility are for the ALJ, and must be set out in the decision, 20 C.F.R. § 404.953; the Court cannot speculate whether or why an ALJ rejected certain evidence. *Jones*, 65 F.3d at 104.  Accordingly, remand is necessary to fill this void in the record. *Id.*[27]

## V.    CONCLUSION

The Court **GRANTS** Plaintiff's motion for summary judgment, ECF No. 15, and **DENIES** Defendant's motion for summary judgment, ECF No. 18. Commissioner's determination that Plaintiff is not disabled is **VACATED**. This case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

Signed at Houston, Texas, on September 10, 2021.

_Dena Palermo_

**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[27] Because the ALJ erred in formulating the RFC, the Court need not address Plaintiff's last argument that the ALJ erred in not including all her limitations in the hypothetical questions to the vocational expert.